STEWART, J.
 

 12J.M., the biological father of J.T., appeals a judgment terminating his parental rights. Finding no merit to his assignments of error, we affirm.
 

 FACTS
 

 J.T., a girl born January 10, 2008, was placed in the custody of the Department of Social Services (“the department”) pursuant to an Instanter Removal Order dated May 28, 2007. The child was removed from the custody of her mother after the department investigated a report that the mother tested positive for cocaine and marijuana. Both the mother and J.T. tested positive for marijuana at the time of J.T.’s birth, and the department had provided services to the mother for substance abuse since February 1, 2008.
 

 | ¾At the time of J.T.’s removal from parental custody, the mother was living in a trailer with J.T.’s biological father, J.M., and some of his friends. Though J.M. told the department that he wanted J.T. to stay with him, J.M. had a history with the department. His history included a valid report of physical abuse of a child, N.H., in March 2007; a valid report of death/neglect of the same child in July 2007, when he wandered away from his home and was
 
 *1011
 
 killed on a highway; a valid report of dependency due to substance abuse which resulted in his daughter, M.H., being placed in foster care; and at the same time as the previous matter, a valid report involving lack of adequate supervision which resulted in the death of a four-month old baby.
 

 J.T. was adjudicated a child in need of care and placed in a foster home. Though no father was listed on J.T.’s birth certificate, a DNA test positively identified J.M. as her biological father. J.M. attended the initial Family Team Conference on June 27, 2008, when a case plan with the goal of reunification was developed. The case plan identified drug abuse and the failure to provide a safe home as the barriers to J.M.’s reunification with J.T. The case plan goals required J.M. to recognize these barriers, acknowledge his substance abuse problems, maintain stable emotional health and well-being, and cooperate with the | department in working toward a permanent plan for J.T. To achieve these goals, J.M. was required to complete a substance abuse assessment and submit to random drug screens, remain alcohol and drug free, submit to a psychological evaluation, attend parenting classes, abstain from all criminal activity, support J.T. in her foster care placement and help contribute to the cost of J.T.’s care, bring age-appropriate activities to interact with her on family visits, keep the department informed of his whereabouts, and provide the names of relatives for possible placement in the event of no reunification between J.T. and either parent.
 

 The record shows little to no attempt by J.M. to comply with his ease plan and achieve the goal of reunification. On December 12, 2008, the district court signed an order approving the hearing officer’s proposed case review judgment, which concluded that J.M. was not complying with the case plan and recommended that the new case plan goal of reunification/adoption for J.T. be approved. The goal of reunification/adoption was approved by judgment dated June 11, 2009, rendered in open court following the permanency hearing. J.M. did not appeal.
 

 IfiOn August 7, 2009, the district court rendered an order approving the voluntary surrender of parental rights by J.T.’s mother. Thereafter, the trial court approved the permanent case plan goal of adoption for J.T. in a case review judgment rendered November 2, 2009, and a permanency judgment rendered in open court on April 26, 2010. No appeal was taken by J.M. from either judgment.
 

 The petition for termination of J.M.’s parental rights was filed on May 5, 2010. The alleged grounds for termination included abandonment due to J.M.’s failure to provide significant support and maintain significant contact with J.T. for a period of six months, lack of substantial compliance with the case plan, and inability to care for a child due to incarceration along with failure to provide a reasonable plan of care other than foster care. La. Ch. C. art. 1015(4), (5), and (6).
 

 Only Cammie Bargainer, J.T.’s foster care worker, testified at the termination hearing. In addressing J.M.’s failure to achieve his case plan goals, Bargainer related that J.M. did not submit to a substance abuse assessment that was scheduled for July 8, 2008. Though he took one random drug test, which was negative, he did not respond to further notices from the department. J.M. did not keep the department advised of his whereabouts. He had been in jail three months before Bargainer [(¡found out about his imprisonment from his wife, D.H. Bargainer also testified that prior to going to jail on September 30, 2008, J.M. attended only two out of 16 scheduled weekly visits with J.T. While in
 
 *1012
 
 jail, he did not contact the department about J.T. Even upon his release in November 2009, he did not visit J.T. Though he met with Bargainer about his other child in foster care, he did not ask about J.T. He provided no gifts or money for J.T.
 

 With regard to whether J.M. provided the department with a plan of care other than foster care, Bargainer testified that J.M. gave her the name of his brother as a possible placement for J.T. However, the placement was not suitable because J.M. and D.H. were living with him at the time. While in jail, J.M. identified only D.H. as a potential placement. Because D.H. and J.M. had a child together and that child was in foster care, placement with D.H. was unsuitable.
 

 The department introduced the various judgments pertaining to J.T.’s removal from parental custody, child in need of care adjudication, case reviews, and permanency hearings, along with the approved case plans. Evidence also included certified bills of information and minutes establishing the following criminal history for J.M.:
 

 1. A bill of information filed May 16, 2007, charging J.M. and D.H. |7with a violation of La. R.S. 14:93, cruelty to a juvenile, to which J.M. entered a guilty plea on February 26, 2008, and received a suspended sentence of two years at hard labor and was placed on two years’ active probation.
 

 2. A bill of information filed January 29, 2008, charging J.M. with a violation of La. R.S. 40:967(C), possession of a Schedule II drug, to which J.M. entered a guilty plea on June 24, 2008, and received a sentence of four years at hard labor on September 30, 2008. His conviction and sentence were affirmed on appeal.
 

 3. A bill - of information filed January 20, 2010, charging J.M. with a violation of La. R.S. 14:35.3, domestic abuse battery of D.H., to which J.M. entered a guilty plea to the reduced charge of simple battery on April 14, 2010, and received a suspended sentence of 6 months in jail with one year of active supervised probation.
 

 Based on his arrest for domestic abuse battery, J.M.’s probation officer filed a motion to revoke probation stemming from J.M.’s conviction for cruelty to a juvenile. On June 15, 2010, the district court revoked J.M.’s probation and ordered him to serve the original sentence consecutive to any other sentence. Bargainer testified that J.M. was now serving six years in prison due to his probation revocation.
 

 J.M. offered no evidence at the termination hearing. The trial court rendered judgment terminating J.M.’s parental rights based on all the ^grounds alleged by the department. The trial court found termination of parental rights to be in J.T.’s best interest and certified her for adoption. J.M. filed a devolutive appeal, which is now before us for review.
 

 DISCUSSION
 

 In his first assignment of error, J.M. argues that the trial court erred in terminating his parental rights under La. Ch. C. art. 1015(4) and (5) because the department did not prove its case by clear and convincing evidence.
 

 While parents have a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with their children, the state has a legitimate interest in limiting or terminating parental rights under certain conditions.
 
 State in the Interest of A.C.,
 
 93-1125 (La.1/27/94), 643 So.2d 719,
 
 cert. denied,
 
 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995);
 
 State ex rel. S.C.M.,
 
 43,441 (La.App.2d Cir.6/4/08), 986 So.2d
 
 *1013
 
 875. To terminate parental rights, one of the grounds for termination set forth in La. Ch. C. art. 1015 must be established by clear and convincing evidence, and termination must be found to be in the child’s best interest.
 
 State ex rel. D.L.R.,
 
 2008-1541 (La.12/12/08), 998 So.2d 681;
 
 State ex rel. S.D.P. v. K.P.,
 
 44,165 (La.App.2d Cir.1/14/09), 1 So.3d 808.
 

 |flThe state sought termination based on the grounds set forth in La. Ch. C. art. 1015(4)(b) and (c) and La. Ch. C. art. 1015(5), which state:
 

 (4) Abandonment of the child by placing him in the physical' custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
 

 [[Image here]]
 

 (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
 

 (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
 

 (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
 

 Lack of parental compliance with a case plan may be evidenced by one of the following factors: (1) failure to attend eourt-approved scheduled visitations; (2) failure to communicate with the child; (3) |infailure to keep the department apprised of his whereabouts and significant changes affecting his ability to comply with the case plan; (4) failure to contribute to the costs of the child’s foster care, if ordered by the court when approving the case plan; (5) failure to comply with the required program of treatment and rehabilitation services provided in the case plan; (6) lack of substantial improvement in redressing the problems preventing reunification; or (7) persistence of conditions that led to removal or similar potentially harmful conditions. La. Ch. C. art. 1036(C).
 

 Moreover, lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be shown by a pattern of repeated incarceration that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time, or any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child for an extended period of time, based on expert opinion or an established pattern of behavior. La. Ch. C. art. 1036(D)(2) and (3).
 

 The manifest error standard applies to appellate review of the trial court’s findings as to whether parental rights should be terminated.
 
 State ex rel. K.G.,
 
 2002-2886 (La.3/18/03), 841 So.2d 759. Whether a parent has complied with a case plan, the expected success of. rehabilitation, and the expectation of significant improvement in the parent’s condition or conduct are all questions of fact that may not be set aside in the absence of manifest
 
 *1014
 
 error or unless clearly wrong.
 
 State ex rel. S.C.M., supra.
 

 Our review of the record shows that the department proved the grounds for termination under La. Ch. C. art. 1015(4) and (5) by clear and convincing evidence. Bargainer’s undisputed testimony established J.M.’s failure, for a period of six consecutive months, to provide any contributions for J.T.’s care and support or to maintain significant contact with her. Moreover, Bargainer’s testimony, along with the evidence introduced into the record, established J.M.’s lack of substantial compliance with his case plan and the lack of any reasonable expectation of significant improvement in his conduct.
 

 According to Bargainer, J.M. attended only two of sixteen visitations that were scheduled before he went to jail on September 30, 2008. The record does not show that J.M. made any effort after September 30, 2008, whether while in jail or during his short time out of jail in the latter part of 2009, to schedule a visit with J.T., to | ^communicate with her in any way, or to inquire about her welfare. Because the record shows that J.M. failed for a period of six consecutive months to maintain significant contact with J.T. by visiting or communicating with her, this alone suffices as a grounds for termination under La. Ch. C. art. 1015(4)(c).
 

 Although neither the court nor J.M.’s case plan ordered him to provide specific support for J.T., the case plan did require him to support J.T. in her foster care placement and help contribute to the costs of her care. There is no evidence in the record that J.M. ever contributed anything toward the cost of J.T.’s care or even provided gifts, such as clothing or other baby items, for her care. Thus, termination is appropriate under La. Ch. C. art. 1015(4)(b).
 

 Noting that he was incarcerated for various periods of time following adoption and approval of the case plan and citing
 
 State ex rel. J.W.,
 
 43,163 (La.App.2d Cir.2/13/08), 975 So.2d 841, J.M. complains that the department failed to show it made any effort to determine what, if any, services were available to him in prison, to assist him with the case plan such as by facilitating visitation between him and J.T., or to remove obstacles to reunification. J.M.’s reliance on
 
 State ex rel. J.W., supra,
 
 is misplaced. In that case, the department developed a case plan | TSfor a parent who was incarcerated in another state without having contacted the parent to find out about her situation, what led to the child being abandoned in Louisiana, or what services might be available to her in that state’s prison system.
 

 Here, the record shows that J.M. attended the initial Family Team Conference when his case plan was developed. He knew what was required of him. Throughout the various hearings, including case plan review hearings and permanency hearings, J.M. never objected to or appealed the court’s approval of the case plan or the findings that he was not complying with the case plan. J.M.’s complaint that the department made no effort to assist him with the case plan while he was in prison is of no merit particularly considering the lack of effort and interest he exhibited in complying with the case plan during the time he was not behind bars.
 

 Imprisonment is not an excuse to escape parental obligations.
 
 State ex rel. C.M.O.,
 
 2004-1780 (La.App. 4th Cir.4/13/05), 901 So.2d 1168. Incarceration is not a defense to failure to support or maintain contact with one’s children in a termination of parental rights case, particularly because incarceration results from one’s actions.
 
 State ex rel. M.H. v. K.W.H.,
 
 40,332 (La.App.2d Cir.9/23/05),
 
 *1015
 
 912 So.2d 88. J.M.’s conduct and actions led to his incarceration; thus, he cannot use his incarceration as an excuse for abandoning J.T. or failing to substantially comply with his case plan. The record shows that he did not attend scheduled visitations even when out of prison, did not communicate with J.T., and did not keep the department apprised of his whereabouts. He has not made any improvement in redressing the problems preventing reunification, particularly considering that he was again incarcerated at the time of the termination hearing. Considering these failings, the state clearly and convincingly proved J.M.’s lack of parental compliance with the case plan and that there is no reasonable expectation of significant improvement in J.M.’s conduct in the near future. Considering J.T.’s young age and her need for a safe, stable, and permanent home, termination was in her best interest and appropriate under La. Ch. C. art. 1015(5).
 

 In his second assignment of error, J.M. argues that the department failed to make reasonable efforts to place J.T. in a relative’s home as required by La. Ch. C. art. 622 and that it failed to comply with La. Ch. C. art. 1036(D). He states that he gave the department the names of his brother and D.H., but that there is no evidence that the department conducted an assessment of either individual or notified him within 10 11sdays after completion of the assessment. By this assignment of error, J.M. is challenging the grounds for termination under La. Ch. C. art. 1015(6), which states:
 

 (6) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child’s age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.
 

 The department need only establish one of the enumerated grounds for termination set forth in La. Ch. C. art. 1015.
 
 State ex rel. S.C.M., supra; State ex rel S.D.P. v. K.P., supra.
 
 As discussed, the department established the grounds for termination under La. Ch. C. art. 1015(4) and (5), so it is not necessary to address termination under La. Ch. C. art. 1015(6). Even so, we find no merit in the assignment of error.
 

 Bargainer testified that in November 2009, when he was not in jail, J.M. gave her the name of his brother as a potential placement for J.T. Because J.M. and D.H. were living with him at the time, the brother could not be considered an appropriate placement for J.T. Bargainer also testified that J.M. identified D.H. as a caregiver for J.T. while he was in prison. Because D.H. and J.M. had a child in foster care, D.H. was not | ^considered a suitable caregiver. Bargainer further testified that J.M. was notified that D.H. was unsuitable and that he did not provide another name. Thus, the record establishes that J.M. did not provide a reasonable plan for the appropriate care of J.T. while he was in prison. For this reason and because J.M. will not be able to care for J.T. during an extended period of time while he is incarcerated, termination is appropriate under La. Ch. C. art. 1015(6).
 

 CONCLUSION
 

 Finding no merit to either of J.M.’s assignments of error and no manifest error by the trial court, we affirm the judgment terminating J.M.’s parental rights to J.T.
 
 *1016
 
 Costs of this appeal are assessed against J.M.
 

 AFFIRMED.