WILLIAMS, J.
|, Joy Wilson appeals a judgment terminating her parental rights to the minor children, J.W., B.W. and A.W. For the following reasons, we affirm.
FACTS
On January 23, 2009, the Department of Children and Family Services (“the Department”) received a report that the minor child, B.W., had run to the home of his maternal grandmother with a bloody nose after being slapped by his mother, Joy Wilson. The mother and grandmother became involved in a physical altercation and the police were called. Wilson was arrested and the Department was called to investigate. The Department was familiar with Wilson, who had been previously arrested for physical abuse of her children. The most recent incident had occurred just one week earlier. A child protection worker, Maisha Carter, interviewed the minor children, who stated that their parents had been fighting and drinking. The children said that when B.W. began crying and did not stop, Wilson slapped him in the face, causing his nose to bleed. Carter also interviewed Wilson, who denied hitting the child. Wilson said the child’s nose was injured after he ran into the door when leaving the house.
Based on the physical injury to B.W. and the history of domestic violence in the family, the children were thought to be in substantial risk of harm. On January 23, 2009, at the Department’s request, the district court issued an oral instanter order to remove the children from the home and place them in the Department’s custody. The children were placed in foster care and adjudicated in Need of Care. The court approved a case plan with the goal of reunification for the family. However, in May 2010, the [ ^Department filed a petition to terminate the parental rights of Joy Wilson and Charles Ragans for their failure to fully comply with the case plan.
*371 The hearing on termination of parental rights was held in November 2010. After hearing the evidence, the trial court issued oral reasons for judgment. The court noted that the children had been in foster care almost two years while their parents were participating in the case plan. The court found that although Wilson had completed the case plan to some degree, the conditions which led to the removal of the children continued to exist, that the parents had not made any substantial improvement in solving the actual problems preventing reunification, including alcohol abuse and physical violence, and that the best interest of the children required a stable home situation. Based on these findings, the court rendered judgment terminating the parental rights of Wilson and Ragans. Wilson appeals the judgment. Ragans did not file an appeal.
DISCUSSION
In two assignments of error, Wilson contends the trial court erred in finding that there was no reasonable expectation of significant improvement in her conduct and that the termination of her parental rights was in the best interest of the children. Wilson argues that the evidence of her completion of the case plan requirements shows that she will be able to adequately care for her children in the foreseeable future.
A parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children, including the companionship, care and custody of the children. in the Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719; tate in the Interest of S.C.M., 43,441 (La.App.2d Cir.6/4/08), 986 So.2d 875. The fundamental purpose of involuntary termination proceedings is the protection of a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs by providing an expeditious judicial process to terminate parental rights and to achieve stability for the child. The primary concern of the courts and the state is to secure the best interest of the child, including termination of parental rights if justifiable grounds exist and are proven. State ex rel. R.L.T. and S.A.T., 45,168 (La.App.2d Cir.1/27/10), 30 So.3d 1085.
To terminate parental rights, the state must prove by clear and convincing evidence the existence of one of the statutory grounds for termination. LSA-Ch.C. art. 1035. Parental rights may be terminated when at least one year has elapsed since a child was removed from the parent’s custody, there has been no substantial parental compliance with a case plan previously approved by the court as necessary for the child’s safe return, and there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future. LSA-Ch.C. art. 1015(5). Once a ground for termination has been established, the court may terminate parental rights upon a finding that termination is in the children’s best interest. LSA-Ch.C. art. 1039; State in the Interest of S.C.M., supra.
The lack of parental compliance with a case plan may be established with evidence of one or more of the following: the parent’s failure to contribute to the cost of the child’s foster care after an order of the court; the |4parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan; the parent’s lack of substantial improvement in redressing the problems preventing reunification; and the persistence of conditions that led to removal. LSA-Ch.C. art. 1036. The lack of any reasonable expectation of significant improvement in the parent’s conduct in the *372 near future may be shown by evidence of any substance abuse that renders the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, or any other condition indicating the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or pattern of behavior. LSA-Ch.C. art. 1036(D).
The issues of parental compliance with a case plan and the reasonable expectation of significant improvement in the parent’s condition or conduct are questions of fact. A trial court’s factual findings will not be set aside in the absence of manifest error. State ex rel. T.J.L.M., 45,517 (La.App.2d Cir.6/23/10), 41 So.3d 1268.
In the present case, Rusty Reed, a child support analyst with the Department, testified that in July 2009, the court ordered Wilson to pay monthly child support of $50 per child. Reed stated that Wilson had not made any payments and that at the time of the hearing her support arrear-age was $2,550. Pat Cover, a social worker with the Department and the case manager for the family, testified that the case plan required Wilson to attend and complete a substance abuse program, parenting classes, anger management classes and to attend a psychological evaluation. Cover stated |fithat Wilson was referred to a licensed counselor, Shelly Booker, for anger management and domestic violence counseling. Cover testified that Wilson completed the parenting classes, but attended only four sessions with Booker and as a result, she failed to complete the domestic abuse counseling requirements of the case plan. Cover stated that although Wilson completed the in-patient substance abuse program at the Pines Treatment Center, she continued to drink alcohol after completing the program and in July 2010, Wilson visited the children with the smell of alcohol on her breath. Cover testified that Wilson had not successfully completed her case plan because her alcohol abuse continued to be a problem and she needed to return to Booker for counseling. Cover stated that she had tried a number of times to visit the home being rented by Wilson, but was never able to get inside to assess the adequacy of the housing. Cover testified that the children were doing well in school and that the foster parents of A.W. and B.W. had expressed an interest in adoption.
Dr. David Atkins, a psychologist, testified that in March 2009, he had performed a psychological evaluation of Wilson and had administered a personality assessment and a parenting inventory. Dr. Atkins stated that Wilson’s personality assessment did not indicate any psychiatric illness. He testified that during the interview, Wilson did not appear to make the connection that her drinking and the physical violence in the home placed the children at risk of being harmed. Dr. Atkins agreed that Wilson’s completion of certain classes or a treatment program would be a positive factor, but he stated that evidence of an actual change in Wilson’s behavior | ¿was more important than her participation in a particular treatment program. Dr. Atkins opined that the children would not be safe in a home situation where Wilson was continuing to abuse alcohol.
Joy Wilson testified that she had relapsed after completing the substance abuse treatment program at the Pines Treatment Center and admitted she had been drinking wine coolers prior to her visit with the children in July 2010. Wilson stated that after relapsing she had not attended any other treatment program, but that she had gone to some AA meetings. However, Wilson could not recall how many AA meetings she had attended, *373 she did not have a sponsor and she could not recite any of the twelve steps of recovery. Wilson stated that she visited the children twice each month, but acknowledged that she had not paid any child support ordered under the case plan, despite having worked at a convenience store for seven months with an income of approximately $500-$600 per month. Wilson testified that she did not recall slapping B.W. and denied hitting her children. Wilson identified herself in police photographs showing one of her eyes swollen shut after being punched by Ragans in July 2010. Wilson stated that she did not need counseling for domestic violence and that she believed she had completed the case plan requirements.
The record shows that the Department assisted Wilson in getting substance abuse treatment and counseling. Although Wilson completed some of the case plan requirements, her overall lack of compliance with the case plan was demonstrated by Wilson’s refusal to pay any child support as ordered by the court, her failure to attend marital and domestic violence |counseling sessions with Shelly Booker, and her failure to allow the case worker to assess the adequacy of the home. In addition, the Department proved that there was no reasonable expectation of significant improvement in Wilson’s future conduct with evidence that she continued to use alcohol, she failed to attend AA meetings as recommended by staff at the Pines Treatment Center, and she remained in a physically abusive relationship with Ra-gans. Based on the evidence presented, we cannot say the trial court erred in finding that the Department proved by clear and convincing evidence that Wilson did not substantially comply with the case plan approved by the court and that there was no reasonable expectation that Wilson’s conduct would significantly improve in the future. Thus, the assignment of error lacks merit.
In her appellate brief, Wilson argues that termination of her parental rights is contrary to the children’s interest in being raised together by their mother. Children need permanency and stability and forcing them to remain in foster care indefinitely, when there is no hope of reunification, runs counter to the state and federal mandates to further the best interests of the child. State ex rel. T.J.L.M., supra; State in the Interest of S.C.M., supra.
Dr. Susan Vigen, a psychologist, testified that she had evaluated each of the children. Dr. Vigen stated that A.W. was doing well in her foster home and that the behavior of J.W. and B.W. had improved in their current placements. When asked if the children’s interests would be served by waiting an additional year to give their parents more time to resolve the problems addressed in the case plan, Dr. Vigen opined that the period of | ¡¡almost two years spent in foster care had been very difficult for the children and that they should not have to wait another year before knowing where they would live. Dr. Vigen testified that she could not support returning the children to a home where the parents were still involved in a violent relationship. The evidence presented by the Department supports the conclusion that the termination of Wilson’s parental rights is in the children’s best interest. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment terminating Joy Wilson’s parental rights to J.W., B.W. and A.W. is affirmed. Costs of this appeal are assessed to the appellant, Joy Wilson.
AFFIRMED.