BROWN, Chief Judge.
_JjIn this termination of parental rights case, the State of Louisiana has appealed from a part of the trial court’s judgment and the parents have answered the appeal seeking a reversal of the trial court’s judgment terminating their parental rights as to two of their five children. We affirm in part and reverse in part.

Facts and Procedural History

In February 2008, Kristina London and Stacy Dotie were living together with their five children in Shreveport, Louisiana. The children’s ages ranged from eight months to five years. The five minor children are identified as SCD, LAD, JED, SLD and ISD. On February 1, 2008, the children were removed from the home, and Kristina London and Stacy Dotie were arrested for abuse and neglect related to inadequate supervision, shelter, food and clothing. The conditions at the home were so extreme that the mother and father were charged by a bill of information with five counts of cruelty to juveniles (La. R.S. 14:93).
On May 11, 2009, both London and Do-tie pled guilty to three counts of cruelty to juveniles. At this time, London was sentenced to three years at hard labor on each count to run concurrently; the sentences were suspended and she was placed on supervised probation for two years. Dotie was sentenced to five and one-half years at hard labor on each count; he was *5 given the benefit of concurrent sentencing and credit for time served.
The five children, all of whom have special needs, had been removed from the home by the State of Louisiana, Department of Children and Family Services (“DCFS”), placed in foster care and adjudicated to be [¡.children in need of care. The children were in foster care until April 2008, when guardianship was granted to London’s parents. Upon her release from jail in May 2009, London lived with her parents and the children sporadically for about three weeks before moving in with a boyfriend, Lorenzo Sherman, a man she had met at a bus stop two weeks earlier. She now has a sixth child with Sherman.
In June 2009, the five children were removed from their grandparents’ home because of abuse by their grandmother, and they were returned to foster care. At that time, the guardianship was revoked and in need of care proceedings were reinstated. On January 4, 2011, the state filed a petition to terminate the parental rights of both London and Dotie, who had relocated to Texas after he was paroled from prison in August 2010.
A hearing was held over a number of days in March, April and May 2011. Thereafter, the juvenile court found that the state had proven by clear and convincing evidence the grounds for termination of the parental rights of London and Dotie as to all five children under the provisions of La. Ch. C. arts. 1015(3), 1015(4)(b), and 1015(5). The court found, however, that termination of parental rights was in the best interest of only two of the children, LAD (now seven years old) and ISD (now three years old), stating “in particular, [because] of their availability and potential for adoption ...” Therefore, the court rendered judgment terminating the rights of the parents as to LAD and ISD. As to the other three children, the court reinstated the need of care case and maintained the children in foster care. Judgment was rendered on June 1, 2011, and signed and filed on June 16, 2011. The state |3now appeals asserting manifest error in the trial court’s ruling that termination was not in the best interest of SCD, JED and SLD. Both London and Dotie answered the appeal asserting that the judgment terminating their parental rights as to LAD and ISD and freeing them for adoption was manifestly wrong.

Discussion

To involuntarily terminate parental rights, the state must prove by clear and convincing evidence the existence of one of the statutory grounds for termination. La. Ch. C. art. 1035. Thereafter, the trial court must decide if termination is in the best interests of the child pursuant to La. Ch. C. art. 1037(B). The trial court’s findings as to whether a parent’s rights should be terminated will not be set aside in the absence of manifest error. State in the Interest of K.G. and T.G., 02-2886 (La.03/18/03), 841 So.2d 759.
La. Ch. C. art. 1015 sets forth the grounds for the involuntary termination of parental rights. The trial court found that the state proved by clear and convincing evidence the existence of the grounds for termination as set out in La. Ch. C. arts. 1015(3), 1015(4)(b), and 1015(5). Those articles state, in pertinent part:
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes ... grossly negligent behavior below a reasonable standard of human decency ...
(4) Abandonment of the child by placing him in the physical custody of a nonpar-ent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently *6 avoid parental responsibility by any of the following:
|4(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
Article 1015(3) requires misconduct of the parent toward the child that constitutes grossly negligent behavior below a reasonable standard of human decency. In February 2008, London and Dotie were arrested and charged with five counts of cruelty to a juvenile. The charges were based upon criminally negligent mistreatment and neglect related to inadequate supervision, shelter, food and clothing. All five children were removed from the home and adjudicated children in need of care. Both mother and father pled guilty to three felony counts of cruelty to a juvenile.
La. R.S. 14:98 provides:
A. Cruelty to juveniles is:
(1) The intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child’s age shall not be a defense.
London and Dotie pled guilty to cruelty to juveniles, a felony that requires intentional or criminally negligent neglect causing “unjustifiable pain or suffering.” La. Ch. C. art. 1015(3) requires misconduct which constitutes “grossly negligent behavior,” which is intended to mean | .¡behavior which exceeds ordinary negligence and which approaches criminal negligence. In Interest of J.L.N., 27,568 (La.App.2d Cir.06/21/95), 658 So.2d 272. The convictions of both parents supplied the proof of criminal or gross mistreatment and neglect.
Both London and Dotie failed to make any significant contribution to the children’s care and support within the six months preceding the filing of the petition to terminate. Notably, Christmas was during the month prior to the state filing its petition, and neither London nor Dotie gave any of the children a gift. London and her boyfriend testified, however, that she was paying child support when she was able. She stated that she was unable to pay the full amount every month, but that she paid as much as she could when she could. London’s self-serving testimony is hardly proof of a significant contribution.
Dotie admitted that he has never paid child support. We note that Dotie was incarcerated until August 2010, and this date was less than six months prior to the state’s filing the termination petition. However, incarceration resulting from a one’s own actions is not necessarily a defense for a parent’s failure to support his children. See State ex rel. J.T. v. J.M., 46,090 (La.App.2d Cir.12/12/10), 56 So.3d 1009.
Lack of parental compliance with a case plan may be evidenced by one of the following factors: (1) failure to attend court-approved scheduled visitations; (2) *7 failure to communicate with the child; (3) failure to keep the department apprised of his whereabouts and significant changes affecting his ability to comply with the case plan; (4) failure to contribute to the costs | fiOf the child’s foster care, if ordered by the court when approving the case plan; (5) failure to comply with the required program of treatment and rehabilitation services provided in the case plan; (6) lack of substantial improvement in redressing the problems preventing reunification; or (7) persistence of conditions that led to removal or similar potentially harmful conditions. La. Ch. C. art. 1086(C).
Moreover, lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one of the following: any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior; a pattern of repeated incarceration that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time; or any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child for an extended period of time, based on expert opinion or an established pattern of behavior. La. Ch. C. art. 1036(D).
The state presented evidence that all five children are special needs children as a result of their mental deficiencies. Dr. Susan Vigen, accepted as an expert in the area of psychology, diagnosed the children as victims of neglect, and testified that neglect early in a child’s developmental period can cause many of the deficiencies present in London’s and Dotie’s | children. Specifically, Dr. Vigen testified that the children had low I.Q.s, developmental delays, cognitive speech and language skill deficits, and other behavioral issues. To be able to care for such children, Dr. Vigen stated, the caretaker would have to be highly involved and able to provide an increased amount of attention to each child’s development.
On these issues, Anthony Williams, London’s counselor who was accepted by the court as an expert in mental health counseling, testified. Based upon his counseling sessions with London, he concluded that, without a great deal of assistance, London did not have the ability to provide the care and attention needed for these children.
As to London’s compliance with her case plan, the testimonies of Erin Jones, Kristina London’s visitation coach, Aretha Glover, the CASA volunteer, and Selena Michael-Shine, the DCFS foster care case worker, revealed that London was not progressing as quickly as she should, and that they were most concerned with her inability to adequately care for all five children and their special needs. All of the witnesses testified that London attended and completed the classes and counseling sessions required of her. Nonetheless, they all stated that she was unable to sufficiently and consistently put into practice what she was taught. Another focal point of the case plan that London continuously failed to comply with was providing adequate housing. We note that immediately prior to the petition being filed London and her fiancé leased and moved into a three bedroom home. While this is clearly a positive step, the fact that it took more than one and one-half years to secure this housing evidences a lack of motivation on London’s Ispart to successfully complete her case plan. Overall, London’s lack of substantial improvement was sufficiently proven through the testimony of the expert *8 witnesses, case workers, visitation coach, and CASA volunteer.
Regarding Dotie’s compliance with his case plan, both he and the state’s witnesses testified that he had not completed his parenting classes, substance abuse program, or anger management classes.
The grounds for termination of parental rights were met in this case. Both parents were convicted of grossly negligent behavior against these children, failed to significantly contribute to the care and support of these children and have demonstrated that they are incapable of meeting the special needs of the children. We cannot find that the trial court committed manifest error in holding that the state proved by clear and convincing evidence the existence of grounds for termination of parental rights pursuant to the Louisiana Children’s Code.
After finding that grounds for termination existed, the trial court nonetheless found that it was not in the best interest of SCD, JED, and SLD to terminate London’s and Dotie’s parental rights. With this we have to disagree. The only factor that distinguished these children was that ISD and LAD were in adoptive placement and their siblings were not.
La. Ch. C. art. 1001 provides:
The purpose of this Title is to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption. In all proceedings, the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved. Termination of 1 ¡parental rights is to be considered the first step toward permanent placement of the child in a safe and suitable home, and if at all possible, to achieve the child’s adoption. The procedural provisions of this Title shall be construed liberally. The proceedings shall be conducted expeditiously to avoid delays in resolving the status of the parent and in achieving permanency for children. (Emphasis added).
In In re State ex rel. W.M.O., 04-2025 (La.App.4th Cir.06/01/05), 905 So.2d 1164, 1168, the court stated:
LSA-Ch. C. article 603(20) provides that permanent placement means the return of the legal custody of a child to his parent(s); placement of the child with adoptive parents pursuant to a final decree of adoption; or placement of the child with a legal guardian. LSA-Ch. C. article 1003(11) defines permanent placement as either placement of the child with a legal guardian or placement of the child with adoptive parents, pursuant to a final decree of adoption. Thus, permanent placement does not include leaving children permanently in foster care. The primary goal is to reunite the family. However, if reunification is not possible, termination is appropriate to free the child or children for adoption. State in the Interest of J.M., 02-2089, p. 16 (La.1/28/03), 837 So.2d 1247, 1257.
Despite her efforts, it is clear that [the mother] is incapable of meeting the special needs of her children. Accordingly, we conclude that the evidence clearly and convincingly reveals that it is in the best interest of R.M.O. and W.M.O. to terminate [the mother’s] parental rights. The trial court erred in not doing so. Therefore, the trial court’s decision is hereby reversed, and E.O.’s parental rights are terminated.
Considering the slow progress made by London and the highly unlikely probability of her ever being able to provide the heightened level of involvement and atten *9 tion that these special needs children will require, the trial court’s choice not to free SCD, JED, and SLD for adoption, but rather to keep them in foster care indefinitely, is clearly not in their best interest. As such, we must reverse this determination.
| inConclusion
IT IS ORDERED ADJUDGED AND DECREED that the portion of the judgment of the trial court terminating the parental rights of Kristina London and Stacy Dotie as to LAD and ISD is affirmed.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the portion of the judgment of the trial court maintaining Kristina London’s and Stacy Dotie’s parental rights to SCD, JED, and SLD is reversed and Kristina London’s and Stacy Dotie’s parental rights to SCD, JED, and SLD are hereby permanently and irrevocably terminated, and all children are freed for adoption.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.