NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1180

STATE IN THE INTEREST OF R.J.J. AND M.L.J.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2009-0293, DIV. I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

Thibodeaux, Chief Judge, dissents and assigns written reasons.
Saunders, J., dissents for reasons assigned by Chief Judge Thibodeaux.

**AFFIRMED.**

**Carolyn Cole, Attorney at Law**
**15th Judicial District Public Defenders Office**
**P. O. Box 3622**
**Lafayette, LA 70502**
**COUNSEL FOR MOTHER/DEFENDANT/APPELLANT:**
    **A.C.**

**Tamara D. Rahim, Attorney at Law**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA 70508**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Children and Family Services**

**Annette Roach, Attorney at Law**
**724 Moss Street**
**Lake Charles, LA 70601**
**COUNSEL FOR FATHER/DEFENDANT/APPELLANT:**
    **R.J.J., Sr.**

**PAINTER, Judge.**

The State of Louisiana instituted proceedings against appellants, A.C.[1], the mother, and R.J.J., Sr., the father, seeking to terminate their parental rights as to two minor children, R.J.J. and M.L.J. The trial court entered a judgment terminating both A.C.'s and R.J.J, Sr.'s parental rights as to both minor children and certifying both minor children to be eligible for adoption. Both parents now appeal. For the reasons that follow, we affirm the trial court's termination of the parental rights of A.C. and R.J.J., Sr.

## FACTS AND PROCEDURAL HISTORY

R.J.J. was born on May 29, 2007, and M.L.J. was born on August 19, 2008. A.C. is the mother of both children. R.J.J., Sr. is the father of both children. A.C. and R.J.J., Sr. were not married. The Louisiana Department of Children and Family Services (DCFS) became involved with this family on March 23, 2009. On that date, A.C. and R.J.J., Sr. were both arrested after a violent domestic dispute, where the children, ages twenty-two months and seven months, were present. The children were taken into state custody on the grounds of neglect and abandonment and were both adjudicated children in need of care following a hearing on May 12, 2009.

Trial on the State's petition to terminate parental rights was held December 4, 2010. At that time, the trial court gave the parents an additional six months to work on their respective case plans. The matter again came for trial on May 31, 2011. The trial court terminated the parental rights of A.C. and R.J.J., Sr. as to both minor children. In written reasons for ruling, the trial court specifically noted that A.C. had failed to abide by any of the conditions mandated by the Court to avoid termination, that R.J.J., Sr. had failed to substantially comply with his case plan, and that there was no reasonable expectation of significant improvement as to either parent. The trial court further found that it was in the best interest of both children that the parental

---

[1]Pursuant to the Uniform Rules-Courts of Appeal, Rules 5-1 and 5-2, the initials of the parties are used to protect and maintain the privacy of the minor children involved in this proceeding.

rights of A.C. and R.J.J., Sr. be terminated and that both children be certified eligible for adoption. Judgment terminating the parental rights of A.C. and R.J.J., Sr. as to R.J.J. and M.L.J. was signed July 21, 2011. Both A.C. and R.J.J., Sr. appeal this judgment.

## DISCUSSION

A.C. contends that the trial court abused its discretion in terminating her parental rights because the State failed to prove by clear and convincing evidence the grounds set forth in La.Ch.Code art. 1015(5). A.C. further alleges that the trial court erred in finding that she did not substantially comply with her case plan, that there was no reasonable expectation of significant improvement in the future, and that termination of her parental rights was in the best interests of the children.

R.J.J., Sr. contends that he completed most of the components of his case plan such that termination of his parental rights was an abuse of the trial court's discretion. He also alleges that the State failed to prove by clear and convincing evidence the grounds set forth in La.Ch.Code art. 1015(5). R.J.J., Sr. further alleges that the trial court erred in considering his arrests, that have not led to convictions, as a basis for concluding that there was not substantial compliance with his case plan. Finally, R.J.J., Sr. alleges that the trial court erred in finding that termination of his parental rights was in the best interests of the children.

We set forth the applicable burden of proof in *State in the Interest of Q.P.*, 94-609, p. 4 (La.App. 3 Cir. 11/2/94), 649 So.2d 512, 515, as follows:

> Parental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law. *State in the Interest of C.P.*, 463 So.2d 899 (La.App. 2 Cir.1985). On this basis, the Louisiana legislature imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights. As explained in *State in the Interest of J* [.], 582 So.2d 269 (La.App. 1 Cir.), writ denied, 583 So.2d 1145 (La.1991), the evidentiary standard established in termination cases mandates that the State present proof by clear and convincing evidence of the parents' failure to comply with all the enumerated conditions relied upon in the specific paragraph(s) of

2

LSA-Ch.C. Art. 1015 before terminating parental rights. Accordingly, this heightened burden of proof requires the State to show not only that the existence of the fact sought to be established is more probable, but rather that the fact is highly probable or more certain. *Hines v. Williams*, 567 So.2d 1139 (La.App. 2 Cir.), *writ denied*, 571 So.2d 653 (La.1990). However, we are mindful that in assessing whether the clear and convincing evidentiary standard was followed in the lower court, we must determine whether the record reflects that the juvenile court manifestly erred. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Moreover, we note that:

Lack of parental compliance with a case plan may be evidenced by one of the following factors: (1) failure to attend court-approved scheduled visitations; (2) failure to communicate with the child; (3) failure to keep the department apprised of his whereabouts and significant changes affecting his ability to comply with the case plan; (4) failure to contribute to the costs of the child's foster care, if ordered by the court when approving the case plan; (5) failure to comply with the required program of treatment and rehabilitation services provided in the case plan; (6) lack of substantial improvement in redressing the problems preventing reunification; or (7) persistence of conditions that led to removal or similar potentially harmful conditions. La. Ch. C. art. 1036(C).

*State ex rel. J.T. v. J.M.,* 46,090, pp. 9-10 (La.App. 2 Cir. 12/12/10), 56 So.3d 1009, 1014.

Courts have also recognized that:

[t]he lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be shown by evidence of any substance abuse that renders the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of harm, or any other condition indicating the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or pattern of behavior. La.Ch.Code art. 1036(D).

*In re J.W.*, 46,526, p. 4 (La.App. 2 Cir. 6/29/11), 72 So.3d 369, 371-72.

A trial court's factual determinations as to whether there has been substantial compliance with a case plan, whether a significant indication of reformation has been shown, and whether the parent is likely to reform will not be set aside unless the record reflects that the trial court was clearly wrong.

3

*State ex rel. G.O.*, 10-571, pp. 5-6 (La.App. 3 Cir. 6/8/11), 68 So.3d 636, 640, *citing State ex rel. T.L.B.*, 00-1451 (La.App. 3 Cir. 4/4/01), 783 So.2d 626, *writs denied*, 11-CJ-1479, 11-CJ-1512 (La. 7/21/11), 67 So.3d 479.

In the instant matter, the trial court found that the State had met its burden and that termination of the parental rights of A.C. and R.J.J. Sr. was in the best interest of the children. We agree.

A.C.'s case plan had six basic requirements: (1) establish safe, adequate, and stable housing; (2) obtain and maintain stable employment; (3) complete and benefit from parenting classes and visit with her children; (4) ensure the safety of the minor children by severing all relationships with R.J.J., Sr. and complete the domestic violence intervention program; (5) complete psychological evaluation and follow the resulting recommendations including counseling; and (6) maintain contact with the agency regarding her whereabouts. R.J.J., Sr.'s case plan also had six basic requirements: (1) establish safe, adequate, and stable housing; (2) obtain and maintain stable employment and make parental contributions to the children's foster care; (3) complete the Family Violence Intervention Program; (4) complete substance abuse treatment and refrain from use of illegal substances; (5) complete psychological evaluation and follow the resulting recommendations including mental health services; and (6) visitation with the children.

With regard to housing, Tameca Polk, the case worker, testified at the December 14, 2010 hearing that A.C. was living a residence leased to both her and R.J.J., Sr. and that the utilities had recently been turned off. At the time of the December 14, 2010 hearing, R.J.J., Sr. was incarcerated. According to Ms. Polk, prior to his incarceration, R.J.J., Sr. was residing in a trailer in Breaux Bridge, Louisiana.

At the May 31, 2011 trial, Ms. Polk testified that A.C. was living in a trailer with R.J.J., Sr.'s sister and that she had visited the two-bedroom trailer and that it did

4

not meet the safety requirements mandated by the case plan as it had no doorknob and had insufficient space for everyone to live. R.J.J., Sr.'s sister testified at trial. She admitted to being involved in a physical altercation with A.C. in October of 2010.

At the time of the May 31, 2011 trial, R.J.J., Sr. was living in a two-bedroom trailer. Ms. Polk testified that the trailer did have working utilities but presented a safety concern because of the step to get in and out of the trailer.

A.C. was unable to provide proof of employment because her alleged employer, Mike Soncha, refused to give proof of income because he paid A.C. in cash. A.C. also indicated that she babysat for R.J.J.'s sister to earn money.

According to Ms. Polk, R.J.J., Sr. had made no parental contributions. R.J.J., Sr. alleged that he was employed as a tile layer. Ms. Polk testified that she received a letter from Daniel Almiral that R.J.J., Sr. worked for him and earned $250.00 per week during a period of time in which R.J.J., Sr. was incarcerated. Therefore, Ms. Polk testified that she had no verification of actual employment.

Ms. Polk further testified that A.C. had completed the Family Violence Intervention Program and parenting classes. After the parenting classes, it was recommended that A.C. participate in the Mentoring Moms program; but A.C. did not do so. A.C. did attend counseling with Sister Kathleen Farrelly, a licensed clinical social worker. Sister Farrelly also testified at trial that it was her opinion that A.C. was not ready to take custody of her two children.

R.J.J., Sr. completed the Family Violence Intervention Program on December 2009. However, he was arrested for another domestic altercation with A.C. in January of 2010 and was again arrested in October of 2010 for simple battery against A.C. He was again referred to the Family Violence Intervention Program. This time, he failed to attend.

Ms. Polk testified that R.J.J., Sr. had completed a substance abuse program at the Lafayette Disorder Clinic on an outpatient basis. In October of 2010, he tested

positive for Xanax. He was admitted to the Capital Recovery Program in Baton Rouge and received substance abuse treatment. When he submitted to a drug screening on May 18, 2011, he tested positive for cocaine and opiates.

A.C. was also compliant with visiting her children; however, Ms. Polk testified that A.C. had missed some visits in the last six months. Ms. Polk also testified that A.C. failed to keep DCFS informed of her whereabouts. In testimony, A.C. admitted that she did not always inform DCFS when she was changing residences.

R.J.J., Sr. also visited his children. However, there were several instances where he did not visit his children because he was incarcerated. Ms. Polk testified that during his visits, R.J.J., Sr. would become agitated if the children did not respond to him.

Finally, Ms. Polk testified that A.C. had not complied with the requirement that she sever ties with R.J.J., Sr. This was evidenced by the fact that A.C. was eight months pregnant at the time of trial, and R.J.J., Sr. was the father. Moreover, A.C. submitted to drug screening on May 18, 2011, and tested positive for cocaine and opiates. At trial, A.C. admitted to having used cocaine on one occasion. She maintained that this was the only time that she had ever used cocaine.

Dr. Ed Bergeron, a medical psychologist, also testified at trial. He evaluated both A.C. and R.J.J., Sr. He diagnosed A.C. with depressive disorder with agitated features and personality disorders with poor coping skills and paranoid traits. He diagnosed R.J.J., Sr. with bipolar disorder with associated features of explosive temper and alcohol abuse. R.J.J., Sr. began treatment at Tyler Mental Health Treatment Center and was prescribed medication for bipolar disorder; however, he did not take the medications as prescribed and was sporadic in attending his appointments.

The two children have been placed together in a foster home since April 2010. M.L.J. has been in the care of the same foster family since her initial placement in

April 2009.  According to Ms. Polk, the children have made significant improvement since their placement with the foster family.  They are bonded and attached to their foster parents, and the foster parents are willing to adopt.

It is clear that despite being given an additional six months to comply with their case plans, the parents failed to do so.  Even knowing that the trial on the termination of their parental rights was set for May 31, 2011, both parents tested positive for cocaine and opiates a mere two weeks before trial.  To make matters worse, A.C. was pregnant at the time of her positive drug test.  The parents also continued to be involved in a volatile relationship with one another.

While we are mindful that termination of parental rights is a drastic measure, from our review of the record, we find no manifest error in the trial court's determination that both A.C. and R.J.J., Sr. failed to substantially comply with their case plans.  Moreover, we find no error in the trial court's determination that there is no reasonable expectation of significant improvement on the part of either A.C. or R.J.J., Sr. in the future.  Finally, we find that the record supports a finding that termination of the parental rights of A.C. and R.J.J., Sr. are in the best interests of the two minor children, R.J.J. and M.L.J.

**DECREE**

For all of the foregoing reasons, the trial court's judgment terminating the parental rights of A.C. and R.J.J., Sr. as to the minor children, R.J.J. and M.L.J., is affirmed.  Costs of this appeal are assessed to Appellants, A.C. and R.J.J., Sr.

**AFFIRMED.**

STATE IN THE INTEREST OF R.J.J. AND M.L.J.


**THIBODEAUX, Chief Judge, dissenting.**

This case is yet another disturbing trend by trial and appellate courts to quickly terminate one of the most fundamental rights – parental rights to a child or children – because of utopian expectations.  In this case, the State did not prove by clear and convincing evidence that the mother and father failed to substantially comply with their case plans so that there was no reasonable expectation of significant improvement.

I concede these are not model parents.  Yet, there is no record evidence whatsoever that domestic abuse affected the children in any way and at any time.  While the drug use is disturbing, the father completed a six-week intensive outpatient treatment at Lafayette Addictive Disorder Clinic and attended AA and NA meetings.  He had not been convicted of any crimes, and he had taken all classes, except a second Family Violence Intervention Program.  While his housing was not a model of palatial architecture, it needed only a very minor modification – a hand rail.

The mother completed the Family Violence Intervention Program, was employed, has consistently visited her children, and had attended nine of fourteen counseling appointments.  She was ordered to sever her relationship with the father of the children.  She did.  The State wishes us to infer that because she was living with the father's sister, this fact alone demonstrated such a relationship.  That invitation is far too tenuous.  At best, it demonstrates a classic *non sequitur*.

The majority posits that the mother was eight months pregnant at the time of trial and that the father of the two children was also the father of the soon-to-be-born child. The majority's math is wrong. The mother was admittedly eight months pregnant. The court advised her to sever her relationship with the father only *five* months before. Therefore, she was at least *three* months pregnant when the court advised her to stay away from the father. There is zero proof that she had any relationship with the father after that admonition. In fact, the evidence shows otherwise. The father's sister testified that he had not visited with them for the past six months before trial. If a relationship was non-existent, how could it continue to be volatile, as stated by the majority?

For the foregoing reasons, I dissent.