| JAMES F. McKAY III, Judge.
This is an appeal from a judgment terminating the parental rights of I.S. to the minor children, A.D.S., A.T.S. and J.D.S. Finding no manifest error in the trial court’s determination, we affirm the judgment of the trial court.
FACTS AND PROCEDURE
On December 2, 2003, the State of Louisiana, through the Department of Social Services (DSS/OCS), instituted an action for involuntary termination of parental rights against I.S., pursuant to La. Ch. C. art. 1015(4), and asserting that I.S. had effectively abandoned her children. The time frame used by the State to pursue this matter is the six-month period from April 14, 2003 through October 14, 2003. The trial court granted the State’s petition for termination of parental rights on January 13, 2004. The trial court found that the DSS/OCS established by clear and convincing evidence that the termination of parental rights was in the best interest, welfare, health and safety of the minor children. This judgment was also binding upon any and all unknown and/or unidentified fathers of A.D.S., A.T.S. |2and J.D.S.[1] The trial court certified that the children were free and eligible for adoption and ordered that the children remain in the care, custody and control of the DSS/OCS.
In November of 2002, the three children, A.T.S.[2], eleven years old, A.D.S.[3], eight years old, and J.D.S.[4], eleven months old, were placed in foster care for the third time.[5] At an adjudication hearing on December 9, 2002, the three children were ordered returned to their mother, I.S. On February 24, 2003, A.T.S. was removed from the custody of I.S. and placed in the custody of the DSS/OCS, which placed her in foster care.[6] Subsequently, a child in need of care adjudication hearing was held and on April 14, 2003, all three children were found to be in need of care and returned to foster care.
On April 14, 2003, the court ordered I.S. to complete a case plan with specific requirements to achieve reunification at the earliest possible time, which included enrollment in parenting classes, submission to psychological evaluations, cooperation and participation in the reunification case plan, obtaining and maintaining stable housing and employment, attending all authorized visitations with the children, and paying $25.00 per month in interim support. At a hearing on May 29, 2003, the court determined that I.S. was in minimal compliance with the court’s prior orders and the case plan for reunification. At a subsequent hearing on ^November 12, 2003, the trial court again noted that I.S. was in minimal compliance with the court’s orders. On December 2, 2003, the DSS/ OCS filed a petition for termination of parental rights alleging that I.S. demonstrated an intention to permanently avoid *916 parental responsibility. The DSS/OCS specifically alleged that:
1. As of the filing of the petition, I.S., failed to provide significant contributions to the children’s care and support for six consecutive months, from April 14, 2003 to October 14, 2003; (a) I.S. did not pay any child support; (b) I.S. did not provide cards, gifts, clothing or letters for the children;
2. As of the filing of the petition, I.S. has failed to maintain significant contact with the children by failing to visit or communicate with the children, except for two visits and one brief contact at court, for six consecutive months from April 14, 2003, to October 14, 2003; (a) I.S. does not maintain emotional support for the children, including failing to contact them on holidays; (b) I.S. does not provide cards, gifts, clothing or letters for the children; (c) I.S. had no in-person, phone or written contact with the children except for two visits and on brief contact at court between April 14, 2003 when A.D.S. and J.D.S. entered foster care and October 14, 2003; (d) I.S. had no in-person, phone or written contact with A.T.S. from the time that child entered foster care on February 24, 2003 until April 14, 2003, A.D.S. and J.D.S. entered foster care; (e) I.S. has failed to consistently make or maintain contact with the agency; she has not consistently inquired about the children’s status or assisted in planning for their future; she has not completed the case plan.
DISCUSSION
Termination of parental rights is a severe and terminal action and to permit it the State must satisfy an onerous burden of proof. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309, 1313 (La.1993); citing, State in the Interest of 540 So.2d 1244 (La.App. 3 Cir. 1989). In a termination of parental rights case, the State must prove all the elements by clear and convincing evidence. La. Ch.C. art. |41035. The evidence must allow the conclusion that termination is in the best interest of the child. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97), 697 So.2d 665, 668. More than simply protecting parental rights, our judicial system is required to protect the children’s rights to thrive and survive. State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, 452. Furthermore, while the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the child. Id. In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, State ex rel. J.A., 99-2905 (La.1/12/00), 752 So.2d 806. The State’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional and mental health needs and adequate rearing by providing *917 an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. State ex. reí. J.A., supra: La. Child. Code art. 1001. As such, the | ^primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution, as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration. State ex rel. J.A., supra; State in the Interest of A.E., 448 So.2d at 185.
Title X of the Children’s Code governs the involuntary termination of parental rights. Louisiana Children’s Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need only establish one ground, Louisiana Children’s Code art. 1015, but the judge must also find that the termination is in the best interest of the child. Louisiana Children’s Code art. 1039. State ex rel. J.A., supra; State in Interest of M.L. & P.L., 95-0045 (La.9/5/95), 660 So.2d 830, 832. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond.
I.S. perfects this appeal and asserts that the trial court erred in granting the State’s petition for termination of parental rights pursuant to La. Ch.C. art. 1015(5).[7] She argues that the trial court erred in limiting the scope of all of the evidence | fito matters that occurred prior to the filing of the petition for termination of parental rights thereby, excluding relevant evidence.
In I.S.’s first assignment of error she argues that the trial court excluded relevant evidence crucial to her rebuttal of the State’s accusations in particularly that she failed to visit her children as per the dictates of the case plan. She avers that it was established during the hearing that she had visited her children approximately eight times in 2003: August 11th, September 17th, October 23rd, October 30th, November 13th, November 20th December 11th, and December 23rd. The State and the trial court gave her credit for only two of those visits, to wit: August 11th and September 17th, as being the only visitations within the period specified in the December 2, 2003 termination petition. She also asserts that she gave birthday presents and gifts to A.D.S. and A.T.S. during the month of December 2003. She argues that the trial court did not allow this information into evidence.
Conversely, the State argues that the trial court did not error in excluding the visitation dates and tangible items given to A.D.S. and A.T.S. that occurred after the petition for termination was filed on De *918 cember 2, 2003, pursuant to La. Ch. C. art 1015(4)(b) and (c), which provides in pertinent part:
The grounds for termination of parental right are:
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
|7(Emphasis added)
A clear interpretation of the above statute demonstrates that the trial court was not in error in finding that any contact or gift giving to the children that occurred after the filing of the termination petition were not to be included in evidence for the purpose of determining abandonment. Clearly, only the visitations that occurred before the petition was filed are relevant. Clearly, the only presents/gifts allegedly given to the children were post petition. Based on the clear language of the above statute, we find that the trial court was not in error in limiting the scope of the evidence to matters that occurred prior to the filing of the petition for parental termination. This assignment of error is without merit.
The appellant in her second assignment of error argues that the trial court erred in terminating her parental rights pursuant to La. Ch. C. art. 1015(5).[8] She argues that the State did not petition the grounds for involuntary termination, to wit, lack of parental compliance, as designated by La Ch. 1015(5). She asserts that the State’s petition for termination of parental rights is based on La. Ch. C. art 1015(4)(b) and (c), to wit, abandonment. Supra.
The State asserts that in the case at bar, that I.S. knew what she was required to do to facilitate the return of her children from foster care. Nevertheless, she failed to pay support, regularly visit or keep contact with the children or the DSS/OCS and failed to make any changes in her situation. The State argues that this is clear and convincing evidence that I.S. effectively abandoned her parental role and responsibilities.
IsDuring the course of the hearing on termination the State called foster mothers of the children. Kate William, foster mother to J.D.S., who, in summary, testified that I.S. had not contributed any monetary or tangible support for the child nor did I.S. have contact with the child except for those arranged through DSS/OCS.
The same sentiments were echoed by Ernestine Burge, foster mother to A.D.S. since February of 2003 and to A.T.S. since April of 2003. She confirmed that I.S. had not given tangible items to either child until December of 2003.[9] She also testified that no interim support had been provided for the children.
Mary Peterson Marchand, the ease manager for OCS, also testified that I.S. had *919 paid no child support for the children.[10] She also testified that during that period in question, to her knowledge, I.S. did not send any tangible items to the children. She further testified that there were only six visits with the children during the relative period. Ms. Marchand also testified that there were two court hearings to assess the situation, one in April 2003 and the other in May of 2003. At these two hearings I.S. was asked if she wanted to visit with the children to which she responded in the affirmative but then without explanation she left the court without visiting with the children.
It is apparent from the record that the appellant’s conduct or the lack thereof, squarely runs contravene to the dictates of the article illustrating a |fldesire to permanently avoid parental responsibility for the children and was effectively abandonment of the minor children. The fact that the State cited to La. Ch. C. art. 1015(4), instead of La. Ch. C. 1015(5), in its petition for termination of parental rights, is of no moment. The State proved by clear and convincing evidence that I.S.’s actions fit squarely with the precepts of both La. Ch. C. 1015 4(b) and (c) and also with (5) which with a careful reading have clearly overlapping elements.
Termination of parental rights is a two prong inquiry: (1) the State, by clear and convincing evidence, must establish at least one statutory ground for termination and (2) only after a finding that at least one of the statutory grounds is satisfied, the trial court must determine whether the termination is in the child’s best interest. State ex rel. L.B. v. G.B.B. 2002-1715 (La 12/4/02), 831 So.2d 918. Clearly, the lack of financial support and the failure to comport with the family reunification or- case plan is indicia of I.S.’s intent to abandon or extricate herself from her children. It is not a stretch to conclude that termination of parental rights in this matter is in the best interest of the children. Clear and convincing evidence supported the trial court’s findings. Furthermore, as gleaned from the record, there is no reasonable expectation that I.S. will reform in the near future. She failed to adequately comport and comply with the case plan, in particularly by refusing to support her children either emotionally or monetarily, and failing to attain gainful employment or a permanent abode for her and her children to reside. We find no merit to the appellant’s argument.
I ^CONCLUSION
Accordingly, based on the above and forgoing discussion we cannot say that the trial court was in error in its judgment involuntarily terminating the parental rights of I.S. to her minor children. Therefore, we affirm the judgment of the trial court.
AFFIRMED.

. The trial court appointed an attorney/curator for the absentee fathers. The trial court found that a good and diligent effort had been made to locate the absentee fathers.

. A.T.S. had three prior cases in which custody was returned to I.S.

. A.D.S. had two prior cases in which custody was returned to I.S.

. J.D.S. had one prior case in which custody was returned to I.S.

. The various removals of the children form I.S.’s custody are allegedly based on physical abuse by I.S.

. This action is allegedly based on abuse.

. La. Ch. C. art. 1015(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.

. See, FN7.

. Note that gifts were not given to A.D.S. nor A.T.S. until December 2003, after the termination petition had been filed.

. I.S. claims that she paid $200.00 to the office in Baton Rouge, but failed to produce any receipts to prove her contention. Mary Marchand testified that she was unable to find any record of such a payment.