JUDE G. GRAVOIS, Judge.
[SC.R. and C.F. are the parents of two minor children. The children were removed from the home by the State. Sixteen months later, the State filed a Petition for Termination of Parental Rights. Following a hearing, the trial court rendered judgment terminating the rights of both parents. They both have appealed. For the following reasons, we affirm.

PROCEDURAL HISTORY AND FACTS

C.R. is mother of two children, J.R., who was born on May 17, 2006, and C.F., Jr., who was born on March 5, 2009. On April 7, 2009, the Department of Children and Family Services (“DCFS”) received a report that C.R. would leave her young children alone to “go out and buy drugs.” On April 16, 2009, the St. John Sheriffs Office notified DCFS that C.R. had been attempting to shoplift in a store. The employees called a relative to come and get her and the children. It was | ¿reported that C.R. could not clearly speak or keep her balance and was thought to be under the influence of narcotics. The children were placed with relatives. On April 22, 2009, a DCFS worker spoke to C.R. and C.R. admitted to taking drugs and acknowledged that she could' not take care of her children while taking drugs “but she needed to feel better.” C.R. was ordered to make a temporary safety plan for the children and they were continued in the care of relatives. On April 28, 2009, DCFS determined that C.R. could not properly care for her children and they would be in danger if they remained in her care. A verbal instanter order was thus issued placing the children into DCFS custody. On April 30, 2009, both parents attended the child in need of care hearing.[1] The father, C.F., was in jail at the time. The court found that the children were in need of care and ordered that the children be maintained in custody of the State. Dates were set for future hearings.
On June 16, 2009, a review hearing was held and the court determined that the children were still in need of care. The DCFS case plan, dated May 28, 2009, was provided and explained to C.R. C.F. was still incarcerated but the DCFS case manager provided a copy of the plan to him and explained its contents. On October 20, 2009, a review hearing was held. C.R. was not present for this hearing because she was in jail. The children were returned to C.F. with supervision by DCFS. The court minutes from that date reflect that after the hearing was over and every *625 one had left, the drug test results for C.F. came back positive. C.F. was informed that he could get retested and another hearing was set for October 22, 2009. Due to the positive drug screen for C.F., the children were returned to custody of DCFS. C.F. was ordered by the court to cooperate with the case plan. C.R. remained in jail.
|sA review hearing was held on December 8, 2009. C.R. was absent (in jail). C.F. was present. The court minutes reflect that the children would remain in their current placement and the court will follow the DCFS case plan. C.R. was served with the plan in jail. She wrote a letter to the court expressing her promise to comply with the requirements of the case plan.
A permanency hearing was held on April 20, 2010. Both parents were present. The court minutes reflect that the “case plan is reunification with concurrent plan of adoption, subject to what happens in the short term.” On July 20, 2010, a review hearing was held. Both parents were present but C.F. was currently serving time in jail. The court ordered that the status quo be maintained. On August 17, 2010, a review hearing was held. Both parents were present. At that point, the DCFS report recommended adoption rather than reunification. The court minutes reflect that the court adopted the recommendation of DCFS.
On August 20, 2010, DCFS filed a petition for termination of parental rights. The court minutes reflect that both parents appeared in court to deny the allegations of the petition.
The hearing on the termination petition was held on November 16, 2010. Dana McGary, the case manager for DCFS, tes-tifled that the children came in to DCFS’s care on April 28, 2009. They were placed with their maternal grandmother. However, when C.F. got out of jail, he took the children from their grandmother and brought them to live with him and his parents. The children were then placed with a foster family. Ms. McGary testified that she went over the conditions of the case plan with both parents. Both parents were told that their failure to comply with the plan within one year of the children being taken into custody could result in termination of their parental rights.
|fiThe plan required that C.R. complete a substance abuse program, refrain from activities that would cause her to be arrested, resolve her pending legal charges, complete a parenting education course, identify transportation for the children, pay $182 per child per month in support, get her driver’s license back, and attend all family visits, family team conferences, and court hearings. Ms. McGary testified that C.R. was arrested on June 22, 2009. She pled guilty to pending charges and part of her sentence was probation with substance abuse treatment. On October 22, 2009, C.R. entered a drug treatment program. She was dismissed from that program for non-compliance due to alcohol abuse. She was found in contempt and sentenced to serve thirty days in jail. She was then placed in “drug court” which required periodic drug screening. C.R. had positive drug tests on February 2, 2010 and May 10, 2010.[2] After testing positive for drugs on May 10, 2010, C.R. was ordered to go to residential substance abuse treatment. She was enrolled in that program at the time of the termination hearing. Ms. McGary testified that she received a letter indicating that C.R. was in compliance with the residential pro *626 gram. On cross-examination, Ms. McGary testified that C.R. had complied with certain aspects of the plan such as attending parenting education and supplying transportation information. Ms. McGary stated that of forty-seven possible visits with the children, C.R. had attended only twenty-five. She also noted that C.R. never had six consecutive months of employment.
Ms. McGary testified that C.R. paid no support, as required by the case plan, from April 28, 2009 until December 31, 2009. She acknowledged that from January 2010 until May 2010, C.R. was working and had paid over $700 in support. Ms. McGary stated that while the children were in DCFS custody, C.R. was arrested six times for failure to complete her probation and for possession of 17stolen things. Ms. McGary explained that C.R. failed to maintain contact with DCFS and advise them of her location.
With regard to C.F., Ms. McGary testified that he was in jail at the time the children were placed in care of DCFS. The case plan requires that C.F. complete a substance abuse program, refrain from transporting the children using a suspended driver’s license, identify transportation for the children, pay the required fee to lift the suspension on his driver’s license, pay support of $182 per child per month, attend all family visits, family team conferences, and court hearings. Ms. McGary also testified that C.F. did not pay any support up until three weeks before the termination hearing at which time he paid $70 for each child. She acknowledged that he completed a substance abuse program but explained that he entered a program on June 3, 2009 and was dismissed from that program in July 2009 for non-compliance. He re-entered the program on August 25, 2010 just after he was served with the petition for termination. He completed the program on October 27, 2010 and was supposed to participate in after-care. There was no proof however that he has participated in after-care.
Ms. McGary explained that when C.R. completes the residential treatment, she plans on living with C.F. and his parents and two siblings in a three-bedroom trailer and the children would sleep in the bedroom with C.F. Ms. McGary testified that C.F.’s parent’s home had a “history with DCFS” as well as “criminal history.”
Ms. McGary testified that the parents had not demonstrated their ability to meet the basic needs of the children as they both were in and out of jail and there was no stability. The children had been in the care of the same foster family since June 18, 2009 and had bonded with this family who wanted to adopt them. For this reason, DCFS determined that adoption was in the best interest of the children.
IsC.W. testified that he is the guardian of the children and they are doing well in his home. They refer to him as “dad” and to his wife as “mom.” The children came into his home when one child was three months old and the other child was three years old. C.W. testified that he feels as though these children are his own and he intends to adopt them.
C.F. testified that in order to comply with the plan, he paid two large fines within the past month. He explained that he earned the money to pay for these fines by working when he was released from prison in August 2010. He stated that he had been in jail a total of 65 days since the children were taken into custody and that he had not paid support because he was not working. He explained that he was currently working and was trying to get “caught up with support.” He testified that he wants the custody of the children returned to him and that he had found a home where they could live.
*627 L.D., a CASA volunteer, testified that she was assigned to this ease and had been following these children since August 1, 2009. She supported the DCFS’s recommendation of adoption. L.D. explained that C.R. and C.F. had a total and consistent disregard for the law as evidenced by their failure to attend court dates, which resulted in the issuance of attachments. She noted that C.R. had had many passes from her residential treatment program, yet she failed to attend two recent court dates. She further stated that these parents had only recently attempted to comply with court orders.
At the conclusion of the hearing, the trial court took the matter under advisement. He then rendered judgment terminating parental rights, accompanied by extensive reasons for judgment. The court noted the failure of the parents to comply with the case plan as described in the testimony of Ms. McGary. The court also noted that while C.R. had complied with certain aspects of the plan in that she | flCompleted a parenting program and furnished transportation providers for the children, she lost her job because she tested positive for drugs resulting in her placement in a residential substance abuse program. This timely appeal followed.

LAW AND DISCUSSION

The petition alleged that C.R.’s rights should be terminated under La. Ch.C. art. 1015(4) and (5), and that C.F.’s rights should be terminated under La. Ch.C. art. 1015(3), (4) and (5). This article provides in pertinent part:
The grounds for termination of parental rights are:
(3)Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
(j) Abuse or neglect after the child is returned to the parent’s care and custody while under department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding.
(4) Abandonment of the child by placing him in the physical custody of a non-parent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
* ⅜ *
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a|incourt order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or con *628 duct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
On appeal, C.R. argues that the trial court erred in terminating her parental rights due to “no substantial parental compliance with the case plan.” C.R. contends that her efforts in the eleven months prior to termination show a significant improvement and reformation, noting that she was employed for the five months prior to the time she enrolled in an inpatient substance abuse program, had paid support for the children, completed parenting classes and attended many family visits.
C.F. also argues that the trial judge erred in finding that he was not in substantial compliance with the case plan. His argument focuses on his completion of drug rehabilitation. He contends that this was the most important element of the plan and that although other portions of the plan were “beneficial for the custody of the children, they were not necessary.” He reasons that the other provisions of the plan did not affect the safety of the children.
While parents have a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with their children, the State has a legitimate interest in limiting or terminating parental rights under certain conditions. State in the Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719, cert. denied, 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995). To terminate parental rights, one of the grounds for termination set forth in La. Ch.C. art. 1015 must be established by clear and convincing evidence, and termination must be found to be in the child’s best interest. State ex rel. D.L.R., 2008-1541 (La.12/12/08), 998 So.2d 681, 688.
lnThe manifest error standard applies to appellate review of the trial court’s findings as to whether parental rights should be terminated. State ex rel. K.G., 2002-2886 (La.3/18/03), 841 So.2d 759, 762. Whether a parent has complied with a case plan is a question of fact that may not be set aside in the absence of manifest error or unless clearly wrong. State ex rel. J.T. v. J.M., 46,090 (La.App. 2 Cir. 12/12/10), 56 So.3d 1009, 1012. The department need only establish one of the enumerated grounds for termination set forth in La. Ch.C. art. 1015. Id. at 1016.
A review of the record indicates there was no error in the trial court’s ruling. In addition to Ms. McGary’s testimony as discussed above, reports to the trial judge and all of the case plans were filed into the record prior to the hearings and corroborate Ms. McGary’s testimony. A review of the case plan filed into the record dated April 15, 2010 indicates that C.R. had made some progress in complying with the case plan. She was currently attending St. Charles drug court but had one relapse and two positive screenings. C.R. had failed to resolve legal issues and refrain from activities that result in her arrest. According to this case plan, C.R. was last arrested on March 5, 2009. She failed to attend the family team conference on October 8, 2009 and had not attended all court hearings due to incarceration. She had completed the parenting classes while seeking substance abuse treatment and she was paying child support. C.F. had also made some progress but had not completed substance abuse treatment and had failed to comply with random drug screens. C.F. had not resolved his legal issues. C.F. had failed to attend the family team conference on November 20, 2009 and had failed to pay any support for the children. This plan was signed by both parents. At this hearing, DCFS requested *629 and was granted a three-month extension to continue to assess the consistency in the family’s progress.
112The report filed into the record on July 15, 2010 for the status review hearing on July 20, 2010 indicates that on May 12, 2010, C.R. was arrested for a drug violation and “her repeated failure to secure a Doctor’s release” to enter a residential drug rehabilitation program. C.R. was originally ordered to enroll in a residential drug rehabilitation program on January 27, 2010, but C.R. had to obtain a release from her doctor and “clear up all attachments and warrants” prior to being accepted into the program. She was finally released from jail on June 30, 2009 to enter the six-month residential drug rehabilitation program. At that time, she had seven open warrants and attachments and her driver’s license had been suspended since 2004. The record shows that as of July 10, 2010, C.F. had been attending a clinic for substance abuse but repeatedly failed to bring the money to pay for his drug test. The test cost $2.00. He was held in contempt of court for missing his probation review in St. Charles Parish, was arrested on April 29, 2010 for contempt, and on May 6, 2010 was sentenced to 30 days in prison. C.F. was released from prison on May 25, 2010, and was given a 90-day suspended sentence and placed on two years of probation. On May 17, 2010, C.F. missed a court date in St. John Parish for multiple traffic offenses. On July 7, 2010, C.F. was arrested for probation violation and sentenced to 30 days in jail. This report concluded that the parents have not made progress with their case plan, have not completed substance abuse treatment, have not obtained valid driver’s licenses, ear insurance or maintained stable housing with working utilities, have not developed a back-up plan in the event of relapse, and were not paying support for their children or adhering to the recommendations made. The report recommended that the children remain in foster care with the goal of adoption and stated that the current caregivers are willing to adopt the children.
11sThe testimony of Ms. McGary and L.D., as well as the reports and case plan reviews, show by clear and convincing evidence that these parents abandoned their children by failing to provide significant contributions to the children’s care and support for any period of six consecutive months. La. Ch.C. art. 1015(4)(b). Additionally, the evidence submitted and testimony adduced at trial show by clear and convincing evidence that at least one year has elapsed since the children were removed from the parents’ custody pursuant to a court order, there has been no substantial parental compliance with the case plan for services which was filed and approved by the court as necessary for the safe return of the children, and there is no reasonable expectation of significant improvement in the parents’ condition or conduct in the near future, considering the age of the children and their need for a safe, stable, and permanent home. La. Ch.C. art. 1015(5). Further, the testimony at trial and reports filed into the record show that the children were thriving with current caregivers who were willing to adopt the children and supports the trial court’s finding that termination of the parents’ rights is in the best interest of these children.
Both parents argue that they were unable to provide support due in part to their incarceration. However, imprisonment is not an excuse to escape parental obligations. State ex rel. C.M.O., 2004-1780 (La.App. 4th Cir.4/13/05), 901 So.2d 1168, 1171. Nor is incarceration a defense to failure to support one’s children in a termination of parental rights case, particularly because incarceration results from *630 one’s own actions. State ex rel. M.H. v. K.W.H., 40,332 (La.App.2d Cir.9/23/05), 912 So.2d 88, 92. Additionally, the minimal support payments made by C.F. were made after the termination petition was filed. La. Ch.C. art. 1015(4)(b) lists a ground for termination for failure to support “as of the time the petition is filed.” Thus, support payments made after the filing of a termination petition are not relevant to cure the abandonment alleged under La. Ch.C. art. 1015. State ex rel. A.D.S., 04-0250 (La.App. 4 Cir. 9/29/04), 888 So.2d 913, 918.
C.R. raises two additional assignments of error that are also without merit. C.R. argues that DCFS failed to develop a case plan within the 60-day time period provided for in La. Ch.C. art. 673. However, the record indicates that the children were removed from the home on April 28, 2009 and the first case plan was dated May 28, 2009 and filed into the record on June 2, 2010. Additionally, this case plan was signed by C.R. C.R. also argues that the trial court erred in excluding from evidence a letter from the residential treatment facility where she was enrolled at the time of the termination hearing. The basis for this argument is unclear as this letter was admitted and is contained in the evidence envelope of the appellate record.
C.F. raises additional assignments of error that are likewise without merit. C.F. contends that the trial court failed to prepare a written judgment following the child in need of care hearing. However, the lack of a written judgment in finding the child in need of care does not defeat a termination that was proved by clear and convincing evidence. La. Ch.C. art. 1015(5) requires that the court approve the case plan. The record shows the court repeatedly approved the case plans filed by DCFS. C.F. also argues that the court’s failure to comply with the procedural requirements in the hearings leading up to the termination hearing caused him to become “very confused and unfocused on what requirements must be met first out of the litany of requirements given to him.” Ms. McGary testified that she met with C.F. and explained the requirements of the case plan and that failure to comply with the case plan could result in termination of his parental rights. The record reflects that C.F. was in court and represented by counsel for hearings held on April 30, 2009, June 16, 2009, October 20, 2009, October 22, 2009, December |1B8, 2009, April 20, 2010, July 20, 2010, August 17, 2010, September 21, 2010 and November 16, 2010. At no time did C.F. object to the proceedings or indicate that he did not understand what was required for him to regain custody of his children. To the contrary, his testimony at the termination hearing and recent actions of paying fines and minimal support indicate that he knew what was required of him to substantially comply with the case plan.
C.F. repeatedly argues that he complied with the case plan in that he completed substance abuse treatment and had no positive drug tests in 2010. However, the record shows that C.F. often failed to bring the minimal payment that was required for the drug tests, thus showing his failure to substantially comply with the case plan. Moreover, the record reflects that the children were returned to C.F. on October 20, 2009 only to be removed two days later due to C.F.’s testing positive for drugs. This is clear evidence of misconduct by C.F. towards the children after they were returned to his custody while under DCFS supervision, when the children had previously been removed from the parent. La. Ch.C. art. 1015(3)(j). C.F. also complains that the trial court made no finding that there was any proof of removal under La. Ch.C. art. 1015(3). This argument is also without merit be *631 cause proof of any one of the grounds listed in La. Ch.C. art. 1015 is sufficient to terminate a parent’s rights.
Finally, C.F. argues the trial court erred in excluding evidence of a paycheck from Automotive Enterprises to show that he was employed. The basis for this argument is unclear as the evidence in the appellate record contains a check dated November 5, 2010 from Automotive Enterprises payable to C.F. in the amount of $231.00.
In sum, after a thorough review of the record and the evidence in this case, we find that DCFS proved by clear and convincing evidence that the parents failed |1fito substantially comply with the case plan and that the trial court correctly terminated the parental rights of C.R. and C.F. The fact that C.R. finally enrolled in a residential drug treatment program over a year after the children were removed from her care and that C.F. had completed a short-term outpatient substance abuse program does not show substantial compliance with the case plan. Further, termination of these parents’ parental rights is in the best interest of these young children who have bonded with the caregivers with whom they have been living for over seventeen months. Adults can take years to improve their functioning but developing children do not have such time, as children’s lives are significantly disrupted while their parents are attempting to deal with their own problems. State in the Interest of C.D., 558 So.2d 806 (La.App. 5 Cir.1990).

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED

. The parents and the children have been represented by counsel throughout these proceedings.

. She also had altered creatinine levels on April 7, 2010 and April 21, 2010. Ms. McGary explained that this is the result of C.F. trying to flush out her system.