WICKER, J.
| iThe State of Louisiana, Department of Children and Family Services (“DCFS”), appeals the denial of its petition to terminate C.F., Jr.’s parental rights to his minor child, C.F.[1] For the following reasons, we affirm.
On June 9, 2014, DCFS received a report expressing concern for the minor child, C.F. Upon investigation, DCFS learned that C.F.’s mother was deceased[2] and that C.F.’s father, C.F., Jr., had a lengthy history of substance abuse and was reported to be passed out after smoking crack cocaine in the home while the minor child was in his care. On June 20, 2014, DCFS interviewed C.F., Jr., and reported that his behavior was disoriented and his speech slurred. DCFS reported that, during the interview, C.F., Jr. admitted to smoking crack cocaine ten days earlier while the minor child was asleep in the home. C.F., Jr. thereafter made arrangements for C.F. to stay with his sister. For the following six days, DCFS made several attempts to contact C.F., Jr. to transport him for random urine drug screenings and to refer him for substance abuse treatment. In light of C.F., Jr.’s alleged lengthy history of substance abuse and failure to cooperate with DCFS, the trial court granted an oral instanter order directing DCFS to take C.F. into its immediate custody.[3]
On August 12, 2014, the trial court adjudicated C.F. as a child in need of care. The initial case plan goal for permanent placement for C.F, was reunification with a concurrent goal of adoption. C.F., Jr.’s case plan required him to find and maintain stable housing for a period of six months; contribute $25.00 per month for C.F.’s care and support; participate in and complete agency-approved substance abuse classes; participate in mental health evaluations and therapy appointments; | ^complete random drug screenings; participate in all court hearings and scheduled Family Team Conferences (“FTCs”); visit with C.F. as scheduled and bring her nutritious snacks and age-appropriate toys; and complete agency-approved parenting classes.
On September 10, 2015, DCFS filed a petition to terminate C.F., Jr.’s parental rights to C.F. In its petition, DCFS sought to terminate C.F., Jr.’s parental rights on the ground of abandonment pursuant to La. Ch.C. art. 1015(4) and (5).[4] DCFS ar *182 gued that termination was proper because C.F., Jr. failed to make any significant contributions to C.F.’s care and support for a period of six months and, further, because he failed to substantially comply with his case plan.[5]
On September 29, 2016, the matter proceeded to trial on DCFS’s petition to terminate parental rights.[6] At trial, Kyra Johnson, a child welfare specialist with DCFS, testified that she is the case worker assigned to C.F.’s case. She testified that C.F. came into state custody on June 26,2014, and had been placed in a certified foster home.[7] She testified that C.F. was previously placed into state custody in 2007, when her father C.F., Jr. admitted to using crack cocaine in C.F.’s presence and her mother, E.M., was discovered passed out in the home. Within the initial six-month period in the 2007 case, C.F. was returned to her parents’ custody.
Concerning C.F., Jr.’s contributions to the care and support of C.F., Ms. Johnson testified that, at the time of trial, C.F., Jr. had made no payments in accordance with his case plan for C.F.’s support. She testified, however, that C.F., |aJr. did provide snacks during his visits with the child and further provided her with a cell phone.
Concerning his compliance with his case plan, Ms. Johnson testified that C.F., Jr. received a certificate of completion for the ordered parenting classes and weekly mental health sessions, which included comprehensive evaluations and one-on-one therapy sessions. Ms. Johnson testified that C.F., Jr. “made every appointment” with the evaluating physician. She testified that C.F., Jr. also completed the required substance abuse program and that, prior to December 2015, although he missed a few drug screens he was, generally, “very good with completing his drug screens.” Ms. Johnson testified that C.F., Jr. has tested positive for opiates but that C.F., Jr. provided proof to show that he had been prescribed pain medication. Ms. Johnson testified that C.F., Jr. never tested positive for crack cocaine.
Ms. Johnson testified that, after the filing of the September 2015 petition to terminate, C.F., Jr. did not appear for his December 15, 2015 review hearing. At that hearing, the case plan goal was amended to adoption. C.F., Jr. further did not participate in his January and February 2016 drug screens, which resulted in automatic positive results for those screenings pursuant to DCFS procedures. Ms. Johnson testified that she observed a noticeable difference in C.F., Jr.’s behavior in December 2015, and the beginning of 2016, surmising that C.F., Jr. following the holidays was still grieving the loss of his wife. After the filing of the petition to terminate, C.F., Jr. indicated to Ms. Johnson that he would surrender his rights to C.F. He told Ms. Johnson he felt that everyone was “turning *183 back on him” and that no one was actually trying to help him get his daughter back. C.F., Jr. appeared for the remainder of the drug screens in 2016, up to the date of trial in September 2016. C.F., Jr.’s drug screen in September of 2016 was negative.
LConcerning visitation with C.F., Ms. Johnson testified that prior to December of 2016, C.F., Jr. visited with C.F. twice a month and regularly made those visits with her, missing few visits. She testified that C.F., Jr. brought snacks for C.F. to each visit. Ms. Johnson testified that C.F., Jr. was in an accident in March of 2016, which required him to have multiple surgeries. She testified that C.F., Jr. missed his monthly visitations with C.F. from March 2016 through July 2016, and that C.F., Jr. was immobile after the accident but was likely mobile by June 2016. C.F., Jr. visited with C.F. as scheduled in August and September 2016.
Regarding his income and housing, Ms. Johnson testified that C.F., Jr. receives $1,067.00 per month in social security benefits. She testified that C.F., Jr. has always had housing since C.F. entered state custody, but that his housing has been inconsistent. She testified that C.F., Jr. recently, in June 2016, leased a 4-bedroom home in Westwego, which provided space for C.F. and appeared operable with working utilities upon inspection. Although C.F., Jr. had stable housing at the time of trial, Ms. Johnson testified that C.F, Jr.’s housing was still a concern because he shared his home with his two adult sons and his daughter-in-law, who each have had open foster care cases.[8]
Ms. Johnson testified that C.F. is very happy with her foster care family, who is willing to adopt her. She testified that C.F. does not want to be removed from her foster family and would like to be adopted. She testified that C.F. has been diagnosed with depression since June of 2016 at which time she began medication. C.F. is attending trauma therapy as she has suffered extreme distress from the loss of her mother. On cross-examination, Ms. Johnson admitted that she has not spoken to the doctor treating C.F. for depression to determine if a part of Rthe trauma and resulting depression is also the result of losing her father’s daily presence in her life as. well. Ms. Johnson testified that, since June of 2016, C.F. has begun exhibiting extreme behavior, and has been caught stealing a package off of someone’s porch, and lying. C.F. is enrolled in therapy and is receiving support and professional care to address her recent behavioral issues.
C.F., Jr. testified at trial that he loves his daughter and that he wants to regain custody. He specifically denied that he uses any illicit drugs and testified that he has been sober for approximately a year and a half. He admitted that he had smoked crack cocaine and that, following the death of his wife, he was in a bad place and went down the wrong path. He further testified that he is a recovering alcoholic and does not drink alcohol. He testified that he is willing to continue substance abuse programs to show that he is committed to remaining sober to regain custody of C.F.
*184 C.F., Jr., testified that he has been taking prescribed medications for “a long time.” He testified that he broke his back years ago, when he was approximately twenty years old, while working on the river. He testified that he has never informed his doctors that he has had a substance abuse problem with crack cocaine, indicating essentially that it is irrelevant because he has never had a substance abuse issue with prescribed pain medication. He stated that any pain medication he has taken has always been prescribed to him by a physician.
Concerning visitation, C.F., Jr. testified that his daughter is suffering from the loss of her .mother and has put up an “ice barrier” and that “one visit an hour a day is not even nearly enough to even start breaking through the ice barrier” to communicate with C.F. He acknowledged that he did not visit with C.F. from April to July 2016. He testified that he broke his hip and his leg and was immobile for a period of time and- that he did not want C.F. to see him like that and to worry about him. He acknowledged that C.'F.’s foster parents are very good people and lathat he has the “utmost respect” for them and what they have done for C.F. However, he testified that he wants to be in C.F.’s life and that he is her father and he loves her very much. He testified repeatedly that he would do “anything” to regain custody of C.F.
Concerning his housing, C.F., Jr. testified' that he resides with his two adult sons, which are C.F.’s siblings. He testified that he thinks it would be in C.F.’s best interest to be with him and her siblings who love her. He further testified that he was previously unable to obtain stable housing because he is on a limited income and only began receiving his full social security benefit of $1067.00 per month in July of 2016. He further testified to his understanding that, if he regained custody of C.F., he would receive additional benefits, totaling approximately $400.00 per month, to assist with housing and C.F.’s needs. C.F., Jr. testified that he would do “anything” to regain custody of C.E., but, when asked if he planned to move out of the home he shares with his sons, he contrarily indicated that his adult sons need his income to live and that they likely “are not going anywhere.” He further testified that, to his knowledge, his sons do not use drugs and that he has never seen his sons use drugs in his home. He testified that if his sons began using drugs in the home, he would have to contact the police and remove them from the home.
C.F., Jr. further testified that, if he regained custody of C.F., he would plan to establish housing in Reserve, so that C.F. could maintain contact with her friends and continue with her life there. He testified that his wife wanted C.F. involved in the church and the community in Reserve and that he would do his best to make that happen. He admitted, however, that he could not financially afford to move' to Reserve in the immediate future.
Concerning the period of time where he did not appear for drug screenings and failed to appear at his December 2016 review hearing, C.F., Jr. denied that he [ 7refused tests or failed to appear because he was on drugs. He testified that, during that time, he felt that there was no need to take the drug tests-and continue with his case plan because he had discussed surrendering his rights with DCFS. C.F.-, Jr. expressed frustration with the September 2015 filing of the petition to terminate his parental rights so soon after,he had completed substance abuse, mental health, and parenting courses. He testified that, at that time, he felt like he could not fight anymore.
*185 On December 2, 2016, the trial court issued a judgment with incorporated reasons, denying DCFS’s petition for termination of parental rights. The trial judge found that DOFS met its burden by clear and convincing evidence to prove abandonment under La. Ch.C. art. 1015(4), pointing out that C.F., Jr, failed to make any significant contribution to C.F.’s care and support. The trial judge, however, found that DCFS failed to meet its burden to prove that termination was proper under article 1015(5) for C.F., Jr.’s failure to substantially comply with his case plan.[9] The trial judge pointed to Ms. Johnson’s testimony that, at the time of the'June 2015 review hearing and before the September 10, 2015 filing of the petition to terminate, C.F., Jr. had substantially complied with his, case plan with the exception of stable housing and financial support.
Recognizing that the state must only prove one statutory ground for termination, the trial judge then considered whether the termination of parental rights would be in the best interest of the child. With reasons, the trial judge found that, despite a finding of abandonment, it would not be in C.F.’s best interest to | sterminate C.F., Jr.’s parental rights. The trial judge denied DCFS’s petition but did not transfer custody of C.F, to C.F., Jr. under La. Ch.C. art. 1089.[10]
DCFS appeals the denial of its petition to terminate C.F., Jr.’s parental rights.
DISCUSSION
Title X of the Louisiana Children’s Code governs the involuntary termination of parental rights. State ex rel. A.T., 06-0501 (La. 7/6/06), 936 So.2d 79, 82. In a termination of parental rights proceeding, the law provides that a parent’s rights shall be terminated if the state proves at least one of the statutory grounds for termination of parental rights, as set forth in La. Ch.C. art. 1015, by clear and convincing evidence. State ex rel. D.D.M., 07-1017 (La.App. 5 Cir. 3/25/08), 983 So.2d 141, 145. The department need only establish one of the enumerated grounds for termination set forth in La. Ch.C. art. 1015. State in Interest of J.R., 11-351 (La.App. 5 Cir. 12/13/11), 84 So.3d 623, 628. In addition, however, the trial judge must find that termination of the parent’s rights is in the best interest of the child. State ex rel. D.D.M., 983 So.2d at 145.
*186 While parents have a fundamental liberty interest in maintaining a meaningful relationship with their children, the child has a profound interest, usually at odds with those of the parents, in terminating parental rights that inhibit secure, stable relationships found in a home with proper parental care. In balancing these two interests, the courts of this state have consistently found that | athe child’s interest is paramount. State ex rel C.J.K. 00-2375 (La. 11/28/00), 774 So.2d 107; State in Interest of J.R., 11-351 (La.App. 5 Cir. 12/13/11), 84 So.3d at 628; State ex rel. E.I.R., 13-450 (La. App. 5 Cir. 11/19/13); 130 So.3d 360, 373, quoting State in Interest of M.B., 12-547 (La. App. 5 Cir. 1/31/13), 108 So.3d 1237, 1241; see also State ex rel. T.P.M., 06-530 (La.App. 5 Cir. 11/28/06), 947 So.2d 751, 757.
Concerning termination of parental rights under La. Ch.C. art. 1015, this Court has recently stated:
La. Ch.C. art. 1015 provides the specific statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. La. Ch.C. art. 1035(A). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child’s best interest. State ex. rel. 16-652, p.15 (La. App. 5 Cir. 03/15/17), [2017 La. App. LEXIS 438,] 214 So.3d 1022.
Thus, a two-pronged inquiry is posed in.parental termination proceedings. See State ex rel. L.B. v. G.B.B., 02-1715 (La. 12/04/02), 831 So.2d 918, 922. First, the party seeking termination must establish, by clear and convincing evidence, at least one ground for termination under La. Ch.C. art. 1015. Id. And second, only after a finding that at least one of the enumerated grounds set forth in La. Ch.C. art. 1015 has been established, the court must determine whether the termination is in the child’s best interest. Id. The determination of best interest is within the discretion of the trial court and is made by the trier of fact considering the totality of the circumstances. State in Interest of T.J., 48,612 (La.App. 2 Cir. 9/11/13), 124 So.3d 484, 493 n.17. Whether termination of parental rights is warranted is a question of fact, and a district court’s factual determination will not be set aside in the absence of manifest error. State ex rel. K.C.C., 15-84, pp. 5-6 (La. App. 5 Cir. 5/26/16), 2016 La. App. Lexis 1025, - So.3d -.
| 10Under this standard of review, an appellate court’s task is not to determine whether the factfinder was right or wrong, but whether the factfin-der’s conclusion was reasonable. Id. If the conclusion is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. (Quotations omitted). Indeed, even where an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. (Quotations omitted).
In our review, we must first determine whether the trial court manifestly erred in finding that at least one ground for the termination of C.F., Jr.’s parental rights under La. Ch.C. art. 1015 was proven by clear and convincing evidence. Upon our review of the record, we find that the trial judge correctly determined that DCFS established, by clear and convincing *187 evidence, the ground of abandonment under La. Ch.C. art. 1015(4), which, at the time of the filing of DCFS’s petition for termination, provided:[11]
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
The record reflects that DCFS proved by clear and convincing evidence the statutory grounds for abandonment under La. Ch.C. art. 1015(4)(b). DCFS’s case worker, Ms. Johnson, testified that C.F., Jr. failed to make any of the monthly payments ordered in his case plan to contribute to the support of C.F. Other than|nsnacks he provided at his visits with C.F. and a cell phone that he provided in 2015, C.F., Jr. made no financial or other contributions to C.F.’s care and support. The snacks and cell phone provided do not constitute significant contributions to C.F.’s care and support.[12] Based upon the uncontradicted testimony presented at trial, we find the trial judge correctly determined that DCFS met its burden to prove abandonment under La. Ch.C. art. 1015(4) by clear and convincing evidence.
Having found that the record supports the trial court’s finding of abandonment, we must now determine whether the trial judge was clearly wrong in concluding that the termination of C.F., Jr.’s parental rights was not in C.F.’s best interest. In her reasons for judgment, the trial judge found that it would be “unfair” to C.F., Jr., as well as to C.F., to terminate parental rights in light of the fact that less than three months before the filing of the petition to terminate, at the June 2015 review hearing, C.F., Jr. had substantially complied with his case plan and was making progress. Further, the trial judge pointed out that C.F. began to exhibit extreme behavior and is still suffering from the loss of her mother. The record reflects that DCFS did not introduce any evidence, such as medical testimony or records, to determine the reason for C.F.’s recent behavior and whether it is related to the loss of her father, as well as her mother.[13]
The record reflects that, at the time the petition to terminate was filed in September of 2015, C.F., Jr. had complied with his case plan goals to complete substance abuse, mental health, and parenting courses. He maintained consistent visitation with C.F. until his March 2016 accident, bringing the child snacks at each visit and attempting to engage in conversation with her. C.F., Jr.’s testimony reflects that he loves his daughter very much and wants to regain custody and | ^remain in her life. With that said, the record also reflects that C.F., Jr. continues to reside in a home with his two adult sons, both of *188 whom have also had open DCFS cases, contrary to DCFS’ case plan requirement to maintain secure and stable housing for C.F. Further, although he has not tested positive for cocaine since C.F. has been in state custody, he has missed numerous drug screenings and on several occasions tested positive for opiates. We recognize that C.F,, Jr. has a prescription for , his narcotic pain medication. However, C.F., Jr.’s lengthy use of narcotic medication in addition to the fact that he has not disclosed to his physicians—who have prescribed the medication—his history of crack cocaine substance abuse, may indicate that he continues to suffer from substance abuse issues that may require continued attention and may inhibit his ability to care for C.F.
This Court, concerning appellate review in a termination proceeding, has- recently stated:
[W]e must always keep in mind that if a trial court or jury’s findings are reasonable in light of the record, we may Hot reverse, even if convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compare with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the'respective courts.
State ex rel. K.C.C., 15-84 p.18 (La. App. 5 Cir. 05/26/16), 2016 La. App. LEXIS 1025. (Internal citations omitted).
We are constrained thus by the manifest error standard of review in this case. We point out that the trial. court judgment dpes. not transfer custody of the minor child to C.F., Jr, pursuant to La. Ch.C, art. 1039[14]; rather, the judgment simply, at this hatime, denies DCFS’s petition for permanent termination of C.F., Jr.’s parental rights. Constrained by the manifest error- standard of 'review—and given the fact that the trial'court judgment does not transfer custody and C.F. remains in the care of her stable foster family—we must affirm the judgment of the trial court.
DEGREE
• For the above mentioned reasons, we affirm the trial- court judgment denying DCFS’s petition to terminate C.F., Jr.’s parental rights to his minor child, C.F.
AFFIRMED

. Pursuant to Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal, the initials of the parties will be used to protect the identity of the minor child.

. C.F.’s mother’s death certificate was introduced into evidence and reflects that C.F.’s mother died on December 30, 2013, of natural causes.

. C.F. remained with her paternal aunt until July 7, 2014, at which time she was placed in a non-relative placement after repeated requests from the relative caregiver, who was unable to provide for C.F.

. La. Ch. C. art. 1015 was amended under Acts 2016 No. 608 § 1. The amendment, for the relevant portions of .the article at issue in this appeal, did not substantively amend the *182 grounds upon which DCFS may seek termination of parental rights by abandonment, which is now provided in sections (5) and (6) of La. Ch.C. art. 1015. In this opinion, we will refer to the version of the statute in effect at the time of the filing of the petition to terminate.

. Specifically, DCFS alleged that C.F., Jr. failed to maintain a safe, stable home; failed to consistently attend court-approved visitation with the child; failed to keep the department apprised of his whereabouts; continued to have positive drug screening results; and failed to make substantial improvement in redressing the problems preventing reunification,

. The trial judge took judicial notice of the underlying child in need of care (CINC) record.

. The record reflects that the certified foster parent is the mother of C.F.’s former first grade teacher.

. During the previous year, C.F., Jr. had been evicted from his home in Reserve, Louisiana, and had temporarily resided with his father in Kenner, and his friend in Metairie. Ms. Johnson testified to her understanding that C.F., Jr. needed his adult sons’ income to contribute to the costs of the household. Ms. Johnson further testified that C.F., Jr. did not qualify for government housing assistance. Concerning C.F., Jr.’s adult sons’ foster care cases, Ms. Johnson testified that one son’s case was closed because the minor child was adopted after the father failed to comply with drug screenings or any aspect of his case plan; the status of the other son’s foster case was unknown.

. At the time of the filing of the petition to terminate, LA. Ch.C. art. 1015(5) provided:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.

. La. Ch.C. art. 1039, in pertinent part, provides the following actions permitted in a judgment denying a petition to terminate:
B. If the court finds that the alleged grounds are not proven in accordance with the evidentiary standards set forth in Article 1035 or if the court finds that termination of parental rights is not in the best interests of the child, it shall enter written findings on both issues and may:
(1) Dismiss the petition.
(2) Reinstate the parent to. full care and custody of the child.
(3) If the child has been previously adjudicated as a child in need of care, reinstate that proceeding pursuant to Title VI. >
(4) Upon a showing of sufficient facts, adjudicate the child in need of care in accordance with Title VI.
(5) Upon a showing of sufficient facts, adjudicate the family in need of services in accordance with Title VII.
(6) Make any other disposition that is in the best interest of the child.

. Because the state must only prove one statutory ground to support a petition to terminate and because we find that the trial court correctly found that the state proved abandonment under La. Ch.C. art. 1015(4) by clear and convincing evidence, we do not address whether the trial court erred in failing to find additional statutory grounds for termination. See State ex rel. M.B., 12-547 (La. App. 5 Cir. 1/30/13), 108 So.3d 1237, 1243.

. See State ex rel. D.L.G., 12-1609 (La. App. 1 Cir. 05/31/13), 2013 La. App. Unpub. LEXIS 359, 2013 WL 2393104.

. In her reasons, the trial judge also pointed out that DCFS never alleged that C.F., Jr. physically abused C.F.

. La. Ch.C. art. 1039, in pertinent part, provides:
B. If the court finds that the alleged grounds are not proven in accordance with the evidentiary standards set forth in Article 1035 or if the court finds that termination of parental rights is not in the best interests of the child, it shall enter written findings on both issues and may:
(1) Dismiss the petition.
(2) Reinstate the parent to full care and custody of the child.
(3) If the child has been previously adjudicated as a child in need of care, reinstate that proceeding pursuant to Title VI.
(4) Upon a showing of sufficient, facts, adjudicate the child in need of care in accordance with Title VI.
(5) Upon a showing of sufficient facts, adjudicate the family in need of services in accordance with Title VII,
(6) Make any other disposition that is in .the best interest of the child.